Welcome to the United States Court of Appeals for the Fourth Circuit. We have two cases on for hearing this morning. Before I begin, I want to welcome and thank our friend and colleague from the District of Maryland, Judge Paula Zinnas, who is joining us remotely this morning. Judge, thank you so much for being with us today. We know how busy you all are, as a matter of course, and even more so recently, and that you've taken time to be with us this morning says a lot about you and your colleagues, so thank you very much for joining us. Thank you for having me. I'm looking forward to it. First case up, 23-1752, Kelly v. City of Alexandria. Mr. Tucci. Thank you, Your Honors. May it please the Court. Robert Tucci, and I have the distinct honor and privilege of representing 10 current and former battalion chiefs of the City of Alexandria Fire Department, several of whom are in attendance for today's oral arguments. At a time of great fraught for public servants, I wish to thank them for their public service. Your Honors, this case presents an issue of first impression for this circuit. Specifically, what constitutes a salary guarantee within the meaning of Section 604B of the FLSA's implementing regulations for salary basis? The court below found that the City in this case paid my clients on a weekly, predetermined amount paid on a weekly or less frequent basis be fixed. It has to be fixed weekly or more frequently. I'm sorry, less frequently. The Supreme Court in Helix v. Hewitt found that what that means... Mr. Tucci, before we get into the meat of your argument, I had just a general question about the nature of this pay scheme, which I think is, to say the least, a little bit complex and sphinx-like in the way it's set up. And you just mentioned the two regulations that we're dealing with, 604B and 602A. Which one of those do you think applies in this case and why? Your Honor, 604B applies in this case. And that's specifically because the Supreme Court has found that both 602A and 604B are not overlapping. In order to be paid on a salary basis, the employer must meet 602A or 604B. 602A requires that the salary be paid on a rate of pay or calculated using a weekly or less frequent rate of pay, meaning that the employer must meet 602A or 604B. Can I jump in for a second just to follow on Judge Diaz's point, which is the district court found as a matter of law that the battalion chiefs were paid on an hourly basis. Did they not? That's correct, Judge Zinnes. Judge Hilton did find that the battalion chiefs were hourly rate employees, and therefore 604B applies. And the defendants didn't cross-appeal. So this Court is limited, is it not, or one can make that argument, to whether the district court properly granted summary judgment on 604B. In other words, we're not to revisit what the district court found in the battalion chiefs' favor that the defendants did not appeal. Am I getting that right? I think that's correct, Judge Zinnes, and I think given the regulatory scheme of 602A and 604B, it's still important to discuss 602A because 602A defines what salary basis means. And because under 604B the guarantee must be paid on a salary basis, 602A tells us what that means. And the Supreme Court has clarified what 602A is actually talking about. And that's where, of course, the salary or the guarantee must have a weekly or less frequent unit of time on the pay stubs, on the paychecks. And Justice Kagan, in her opinion, actually wrestled with this in oral arguments in Hewitt. She said it's a clunker of a sentence in 602A. And so, you know, it's a really dense regulation, but at bottom the employee must be paid using a weekly or less frequent rate. And here the chiefs did not get a weekly or less frequent rate of pay. They got an hourly rate of pay. On their personal action forms, it lists an hourly salary. I'm sorry, an annual salary. It also lists an hourly rate. Nowhere in their pay personal action forms or the pay scales or any other documentation provided to them by the When we look at what other courts have done when confronted with 604B, the Sixth Circuit in Hughes, when looking at this language concerning a guarantee, said, okay, that makes sense. It's a guarantee. It has to be guaranteed. It has to be a matter of right, not a matter of grace. Is it guaranteed in practice or guaranteed? Because you seem to be making an argument that there was no formal agreement with respect to a guarantee, but your colleagues on the other side say that as a matter of practice over the years that that is what, in fact, has happened. That there's always been a guaranteed number of hours and salary sufficient to warrant the battalion chiefs being considered to be exempt. Thank you, Judge Diaz. And just to answer directly your question, it must be a guarantee in fact. And in this case, the city is pointing to meaning what in practice or what are we looking for in terms of the guarantee? It must be a matter of right, not a matter of grace. And in Hughes, what the Sixth Circuit said was we look at the employment agreement and is it a contractual right for the employees? And so here what the city has done is point to payroll records and then combine ten separate pay codes to manufacture the illusion of a guarantee. There's nowhere within those payrolls, and that's at the joint appendix, page 87 to 198. There's nowhere within those pay codes that references a guarantee or that has any pay codes which are paid on a weekly or less frequent basis. And so the city also claims that this pay advance to the battalion chiefs that worked on an operational schedule, specifically where given the natural cycle of the operations where it's a 28-day work period, there's two pay cycles within the 28-day work period. And for one of the pay cycles, it typically, a battalion chief or any other operational firefighter, would work less hours than the next pay cycle. So to accommodate the firefighters, given this occurrence, they would essentially issue a pay advance for 106 hours minimum on the first pay cycle. And then on the second pay cycle, they would true up those pay advances and actually deduct from pay whatever amount of hours were not worked but paid in the previous pay cycle. So at bottom, it's a pay deduction, which is not allowed under the salary basis regulations. But it's not a guarantee, Your Honors, because, again, there's no documentation. The chiefs were not even informed. Let me ask about that deduction and true up. But all of these things that were done, the deduction that you say, the taking from the leave account, which I also know you take objection to, were all in furtherance of assuring and ensuring that the battalion chiefs were paid a fairly consistent salary across the board, both for their operational work and their administrative work. And isn't that the intent of the statute and the regulations? No, Your Honor. The intent of the statute and the regulations is to ensure that employees are paid time and a half for overtime work, unless they're a bona fide executive administrator, et cetera. The statute provides the department, the Secretary of the Department of Labor, with authority to define and delimit what the exemptions mean. And so that's where we get to 602A and 604B. The Secretary has determined that to be a bona fide executive or administrator, you must be paid on a salary basis. And what the Supreme Court has clearly held is that means when you look at your pay sub, when you look at your payroll records, the rate of pay is not an hourly rate. It's a weekly or less frequent rate. And that's exactly what the case is here, Judge Diaz. The chiefs received an hourly rate. And in every work period, they were paid for their hours worked or if they took leave, they were paid for theirs. And they were always highly compensated employees. Judge King, the highly compensated exemption is essentially a relaxed standard for the executive administrative exemptions in this case. And that was also at issue in Helix. The employee there earned over $200,000 a year. And he was paid a day rate. The employer in that case argued that his day rate, which at that time exceeded the salary level requirement by itself, that that day rate, as long as he worked one day, he would be paid the day rate and therefore that met the salary basis requirement. The Supreme Court said that can't be the case because it's a day rate. Even if it exceeds the salary level requirement, the employee still must be paid a weekly or less frequent rate, meaning the calculations of the pay. And Justice Kagan notes that in her opinion. The pay must be calculated that way. Well, let me ask you this. I know it's not your job to figure this out. But it's the employer's burden to make its case with respect to whether or not an employee is exempt or not. I think part of the problem here is the nature of the salary or the compensation structure is an attempt to reflect the very unusual responsibilities and requirements of time that these, frankly, very brave public employees take on. But that doesn't mean, obviously, that an employer can't pay these battalion chiefs a salary sufficient to make them exempt. So given the fact that we're dealing with these very strange structures, some firefighters are working operationally, some are working administratively, some are working 24-hour shifts, some are working eight-hour traditional shifts. What do you say that the employer, the city in this case, would have had to do in order to truly make these employees exempt? Well, Judge Diaz, if the city wants to maintain an hourly rate and to calculate the chief's pay on an hourly basis, they can meet 604B's requirements by also providing them a guarantee salary paid on a salary basis per week. And that, of course, guarantee has to bear a reasonable relationship to the employee's actual earnings during the normal scheduled work week. That's straight out of 604B. And... Counsel, in that regard with what the city would have to do, if I'm getting the second prong of 604B right, you have to look at the actual wages paid by the city to the battalion chiefs and compare it to whatever that guarantee is. So if we just assume for a moment that there's evidence of a guarantee and we're trying to figure out whether there's a reasonable relationship between the two, am I correct that we would look in the JA at the actual paychecks cut to the battalion chiefs, which show, kind of illustrate Chief Judge Diaz's point that this is very sphinx-like. We've got a salary and then we've got all of these additional pay lines for each check, which it seems to make the point that there's no reasonable relationship between any base pay and what they're actually paid. I don't know if I'm making myself clear, but what I'm trying to figure out is, again, if we're keeping this really the district court's comparison were these hourly rates and it doesn't, in my view, comport with the actual plain language of 604B, which says you have to look at the actual amount paid. And I wanted to make sure that you could address that in the context of Chief Judge Diaz's question about what could the city have done differently. Thank you, Judge Zenas. And I think that's exactly right. I think when you look at 604B, there's no other way to read it. I think it says actual earnings, and then it goes on to say what are actual earnings. Well, you look at the usual earnings at the employee's normal schedule work week. Here, the chiefs had a 28-day work period when they're on an operational shift, and then a 80-hour work period for an administrative shift. And so what would a guarantee look like in that situation? Well, it has to bear some reasonable relationship to what they're actually earning each work period. And so I think in that situation, you know, the DOL has said a ratio of 1.5 is satisfactory. Anything over that, you know, we'd have to look at pretty carefully. Here, I think it's pretty clear that there was no reasonable relationship. You know, we cited the example of Chief Cook in the briefing, and his pay always had a ratio, when you look at the actual earnings, 1.7 to 1.8, roughly. And to remove, and I see my time is expiring. You may answer. Go ahead. Thank you. And to remove the chief's overtime pay from that reasonable relationship analysis, it completely divorces the intent of the statute, of the regulations. The statute was designed to protect employees, and it's all about overtime work. It's all about what should you pay for the overtime hours. So I see my time is expiring. Well, no, that's okay. I actually have a follow-up question. So you just mentioned the ratio, which you think actually supports your point. But the district court, and you know, we're always, it's always a bit problematic when judges do math of any kind. And so maybe you can help us with this. I think lawyers in general. And I, well, I'm excluding Judge Zinnis, who I'm sure is quite adept at math. I'm not sure about that. I became a lawyer, and a judge. But tell me what was wrong with the math that judge, that the district court in this case used in order to come up with a ratio that he seemed to believe satisfied the regulation in this case. Well, Judge Diaz, it's really interesting what Judge Hilton and the city did to calculate the reasonable relationship ratio. What they did was they took the regular hour earnings of the chiefs and removed all other compensation that they earned during their work periods. So that includes overtime. And the city claims, you know, a lot of that overtime is voluntary. I think there's some dispute about that. But we know that in this case, whether it's voluntary overtime, involuntary overtime, all work is voluntary. No one can force you to work. And so I think in this situation, why are we removing that compensation? The regulation says what the employee actually earns, not what the employee's regular earnings are, or non-overtime earnings are. And so that's what the district court did. Removed all of their overtime. And so that's how much the reasonable relationship ratio can get to. Because essentially, take the administrative shift, for example. The district court found that only 80 hours of pay could be factored into the reasonable relationship analysis, not anything above that. It completely divorces the intent and meaning of the statute and the regulations. And I see my time has expired, so thank you. Thank you. You've got some time left for rebuttal. Thank you. Mr. Dabbs. Good morning. May it please the court, my name is Dave Dabbs. I represent the city of Alexandria. The ten plaintiffs in this case were paid on a salary basis because all of them regularly received predetermined amounts that were large enough to cover their normal work weeks. And it's undisputed that the city consciously and deliberately ensured that those amounts were paid without exception through the entire statutory limitations period. There were no improper deductions whatsoever. We think the court can affirm the district court's opinion, as written, for a couple of key reasons that I want to talk about. I would like to address briefly. Mr. Dabbs, I'm sorry, before you get cranking. A clock problem. Sarah, is that timer working for Mr. Dabbs? The other Sarah. There we go. Okay. Sorry. It was running. Go ahead. I did want to address, though, before I sort of talk about what I want to talk about, even, that we do not think it was necessary for us to cross-appeal in this case because we are not asking for any different relief from what we asked for in the district court. Under those circumstances, as we understand the rule, the court can affirm for any grounds supported by the record, even if the district court did not reach it or reject it. And that actually is a good idea. But I'm going to start by telling you about the two key reasons that we think you can affirm, as written. The first is that the city did provide a sufficient guarantee of the plaintiff's receipt of their predetermined amounts to qualify for exemption. And the second is that the city satisfied the reasonable relationship test. Now, can I ask the same question I asked of your colleague? That guarantee, is it a formal acknowledgement of the guarantee? It is enormously clear under 602B that that is a guarantee in practice. Now, the regulation in 604B uses the term employment arrangement that includes a guarantee. We've cited the Coates case for the proposition that the guarantee in 604B simply means the receipt or the not being subject to reduction standard that's in 602A. And we think that's right for various reasons. And that's actually where I wanted to go in terms of a guarantee. Mr. Dabbs, can I ask a question about how the city gets to the minimum hours expected to be paid? If I understand it right, just because I think Chief Justino's point is well taken, this is very sphinx-like, and I want to make sure I understand the details. It appears as if for every pay period, if there is a situation in which the battalion chief did not actually work the minimum hours expected to be paid, that guaranteed salary that you say, then the city is actually compensates at that salary, but it deducts annual leave to do it. So it's all calculated on an hourly basis where the city pays for the hours actually worked and then makes the difference up through annual leave. Am I getting that right? It's not always annual leave, Your Honor, but it's always something. Some other leave. Some other leave that is a code in the city's code book to make up the difference. Am I right? Correct, yes. There are a variety of types of paid leave that are designed to do this. This is a point that Mr. Tucci seemed to have difficulty grasping in some of his briefs. Well, I'm having difficulty too, so I want to stay with it for a minute. Understood. Answer the hypothetical for me. I understand that the city actually gives leave generously, but say you have a situation in which a chief runs out of all leave. There's no other leave available, and the chief, for whatever reason, does not work the, let's use an administrative chief because that's easy, 40 hours, does not work the 40 hours that week. How practically does the city make up the difference if there's no more leave left for that chief? There's not really a practical answer to that question, Your Honor, because it has never happened within the memory of our government. That's different than what you would do. True. What I'm hearing in that answer is, we don't know, but perhaps what happens is the chief doesn't get paid the guaranteed minimum because of the way in which it's done. And if you're relying on leave to fill the gap, then it's not a guarantee. It's just a practice of how to get there. And there is a theoretical possibility that if a chief doesn't have the leave, then the chief doesn't get the pay. Your Honor, there is actually some deposition testimony on that from Mr. Bossie. And as I recall, and I'm not prepared to cite the page number, but it's in the joint appendix, his reaction was that if a situation came up where, you know, the payroll was showing that one of these employees did not have sufficient pay on the way, that what he would do is check the rules, consult with the city attorney's office, that they would figure out whether or not the salary basis rules, the implication of this, figure out whether or not the salary basis rules applied to require payment. There are other exceptions to salary basis. I mean, if somebody is on a certain kinds of disciplinary suspension, if somebody takes a full day for personal reasons, those are permissible deductions consistent with salary basis. Mr. Bossie showed an awareness of those rules. There's no reason to think that the city would not have responded appropriately to that. And the other point I would make, Your Honor, in response to that, is that, you know, your question about was there a practical danger, that's the kind of question that the Supreme Court was answering in the Auer case, A-U-E-R, which is no longer well regarded under administrative law. But the substance of that is where the law was. And the changes that were made in 2004 actually moved the law further in the direction of simply looking for the practical answer of was the predetermined amount regularly received or always received. And it's very, very clear in all of the commentary that went with the regulatory changes in 2004 that the money is just as green, no matter how it's classified on the pay stub. We also think it's very clear from the language of 602 that there is no restriction on how the employer picks the predetermined amount. But then how do you explain the true-up payments? The true-up payments seem to contradict that, at a minimum, create a genuine issue of disputed fact, that the city has to, at the end of the pay period, the 28-day period, or at the beginning of the 28-day period, or at the end of the year, actually compensate the battalion chiefs to get them to the minimum, if I'm understanding it right. And, in fact, according to the deponent that you just referenced, there were five years where the true-up payments weren't even made. So why doesn't that number one, and then we have at least one battalion chief who was paid less than the quote-unquote guaranteed salary, why don't those facts send this back for a more robust trial on whether there is a guarantee at all? Your Honor, with all respect, I think you're conflating two things. Maybe, because this is really difficult. Your Honor, there has been some reference at some points in the case to what was called an annual true-up thing, which is a thing that was done at the end of the year. If anything, it shows that the city was particularly concerned about making sure that people got the full annual salary for every 52 weeks, that there was not even trivial deviation from it. No, but the true-up is to make sure that you get the full, the person gets the full salary. Hold on. We don't rely on the annual true-ups. We rely on the payments every two or possibly four weeks for those periods. What Mr. Hickman said, in fact, just the simultaneous operation of two overlapping guarantees, one for 106 for every pay period, this is for the operational people, this has no application to the administrative chiefs. 106 is the amount of the guarantee for every two-week pay period, and 216 is the operating minimum for any 28-day work cycle, and that means that the various examples that play out, and we work through several of them in our briefs. Well, 216, actually not quite. They come out of the work schedule in some sense. The regulation for firefighters permits use of an overtime threshold of 53 hours. So for our non-exempt firefighters, for those extra four, we always have to pay time and a half. Some of the tracking in the system reflects that history and the sort of configuration consistent with that system for non-exempts. So there is no deduction from pay. Can I ask another question? Maybe this is much simpler. Isn't the pay scheme identical for all of the lower-ranking officers, the captains and on down, but for the straight time overtime versus time and a half overtime? Just a real simple yes or no. Am I saying that right? Yes, you are seeing that right. Okay. And isn't that also a fact that could generate a genuine issue of disputed fact as to whether these folks, the battalion chiefs, are truly exempt employees or non-exempt employees? It's just this fact that there really isn't anything different in the way that the city handles their pay, how they calculate the pay, other than the chiefs don't get time and a half on overtime. Your Honor, there is absolutely nothing improper about paying a non-exempt employee on a salary basis. Correct, if you do that. That's sort of why I'm asking. If, in fact, it's your burden and the plaintiffs are trying to generate evidence to undercut that burden, wouldn't one just very basic fact be that there's just no practical difference at all between the way in which the city calculates pay, deducts pay, uses annual leave or other leave to make up these differences, true up at the end? It's all the same, but for one thing, which is that the battalion chiefs don't get time and a half for overtime. Your Honor, all of the duties issues in this case were waived by the plaintiffs after we moved for summary judgment. There is absolutely no role in the salary basis analysis for how we paid some other group of employees. It simply has no role in it. Why not? Because it has to do with the pay to the employees that we are talking about. It's their pay system that matters. And, I mean, you can, I think, read the regulations in vain and you will not see any reference to differences in how we pay other people. So if I'm understanding that you're suggesting that you could apply the same limitation on overtime pay to those captains and line officers? No, Your Honor. We don't do that. We pay them time and a half. But could you do that? Well, the pay system is consistent with doing that. Now, we have this Court's decision in Morrison v. County Fairfax, which held on the exempt status of captains, and, of course, you know, it's not necessarily exactly the same. But we adhere to that. We treat the captains and all of the lower employees as non-exempt. Okay. Which poses no problem for this case. So let me proceed just a little bit. We think there are numerous reasons why the Hughes case is not a viable source of law for plaintiffs on the guarantee. One is historical. The Department of Labor specifically wrote the term employment contract. Out of the relevant regulations, when they revised them in 2004, they substituted the term employment arrangement, which clearly does not, we think, require a contract. The Department of Labor knows how to require mutuality when they want it. There's another regulation involving overtime calculation, 778.114, that requires a clear mutual understanding with employees. So the Department of Labor knows how to say that. Factually speaking, the statement that the plaintiffs rely on from Hughes is dicta. Hughes was a case where the employees, frankly, they had terrific evidence. The employer had told the people in writing that their quote-unquote salary would be $338 per day worked, which is direct evidence that the employer there was not paying on a salary basis. All the Hughes court said, really, was that the issue of the question of a contract, the existence of a contract, was not irrelevant. And that's correct in context. If the employer had had a contract where they promised salary basis with a merger clause, say, that would have destroyed the evidence that was the problem for them, if it had supplanted it. Hughes also relied, I think, problematically on dictionary citations. And the thing we note is that what they found did not support their conclusion that contract was required. The key word was assurance. If you look that up in the same dictionaries, it just says something that gives or inspires confidence. We think there is confidence in this case because Mr. Bossie and his staff were flyspecking the payrolls. They were aware of the rules. And it was documented in a memorandum that Mr. Bossie drafted, which was circulated at a time when all of the plaintiffs were employed, which described it was essentially an FAQ, which said, I only work 96 hours this past period. How much do I get paid? And the answer was, you get 106, because you always get 106. Perhaps, can I ask, assume for purposes of argument you meet the first prong of 604B, which is that there is a guarantee. How do you meet the second as a matter of law? Because the second prong reads that the promised amount must bear a reasonable relationship to the amount actually earned in a typical week. In other words, roughly equivalent to the employee's usual earnings at the assigned hourly, daily, or shift rate for the employee's normal scheduled work week. And maybe this is more specifically responsive to the actual paychecks cut at JA89 and forward. Why isn't that what we should be looking at to suss out the reasonable relationship test? Well, Your Honor, you're prompting me along to my next topic. The discussion with Mr. Tucci looking at 604B focused on the first sentence of the regulation. We think it is critically important that the Court should also note the second sentence of the regulation, which we think is actually the more technical and complete explanation of the rule. The second sentence reads, the reasonable relationship test will be met, will be met if the guarantee is roughly equivalent to the employee's usual earnings at the assigned hourly, daily, or shift rate for the employee's normal scheduled work week. Now, that phrase, normal scheduled work week, was critically important to the District Court's opinion, because we do in this case have normal scheduled work weeks for both the administrative chiefs and for the operational chiefs. The operational chief's normal scheduled work week is their rotating nine-day cycle, where they work days one, three, and five. That is what generates the minimum of 216 hours for every 28-day work period. The District Judge's opinion is completely proper, we think, in looking to that to establish what goes in the numerator of the reasonable relationship analysis. When that is done, the ratio, it's undisputed, I think, that if we are correct to use the normal scheduled work week, as the regulation specifically says, then that ratio comes in way, way, way below 1.5. But the example in 604B, the example is one that suggests you have to look at the actual rate and you compare apples to apples. In the regulation itself, it uses the example of a shift worker who is paid, actually, normally, he works four or five shifts each week, he's paid $350. That's the actual pay. Maybe you can make the argument it's averaged over time, but it's the actual pay as compared to the guarantee of $1,200. Here we have hourly workers. If you just stick in 604B for a second. Isn't it fair to look at the actual hours worked over time, normalize them? But doing that means we have to go back to the actual paycheck and see how many hours each of the officers are working. Otherwise, are we not complying with 604B? Well, Your Honor, our view of that, and there are a number of interesting uses of what I will call loose introductory language, but there is one sentence in that reg that is very, very specific. What goes on each side of the ratio? And the Department of Labor has been equally clear about what generates a reasonable relationship. One of the difficulties, I think, of the approach that Your Honor is suggesting is, I mean, one would have to do real-time monitoring on the employees, and there's absolutely no guidance that would tell us what we should be monitoring. If you're trying to figure out, for example, I think this is a good example, if an employer is covered under COBRA, it depends how many employees there are, but they tell you exactly in the law somewhere what you should be measuring. Is it at any date in this or the previous calendar year? They tell you what to look at. There's nothing here that does that. The only place you can find a consistent thing to compare to is to look at the normal scheduled work week, and then that tells you how much the guarantee needs to be. And it doesn't matter how, in practice, that normal scheduled work week doesn't really align with the realities on the ground. So the employer says, in this case, you know, three 24-hour shifts over the course of a week, but if in practice they work substantially more, I mean, who gets to decide what is normal, is the question. Well, I mean, it is a term to be interpreted. In this case, you know when an operational battalion chief is working outside of his normal nine-day rotation where he works days one, three, and five. You know by definition he is not working with his normal group of people who report to him. He's substituting somewhere else. He may be on the other side of the city. He may be doing completely different duties, and these shifts are scheduled in completely different ways. Our Assistant Chief Cross gave an affidavit, he did several, but it was one of the later ones, where he describes the system. You can compare Mr. Bossie's affidavit has a calendar in it, which is, you know, it's an annual calendar. It's done in the three colors. It tells you when your shift is going to be on. You can look at that calendar now and know if your shift is scheduled to be on at Christmas. The extra shifts, overtime shifts, are done through what I kind of jokingly refer to as a dating cycle. It's a dating site to match employees who would like to do extra shifts up with where they are available. That's not settled until two to five days before, and of course, you know, that reflects the urgency that we need to provide public safety services for our citizens to make sure those things are carried. But they're scheduled in a wildly different way, and it is absolutely certain by definition that the chiefs are not doing their regular job. That plus the consistency of the rotating nine-day schedule, we think, makes it very clear that that is the normal scheduled work week. Mr. Dabbs, your time is up, but let me ask my colleagues if they have any other questions. Judge Ennis? Just have one, is that okay? Sure, yeah. Have at it. So, thank you. I just, in response to your point about normal doesn't mean actual work, didn't Justice Kagan in Helix clarify this to some degree when explaining that 541-604-B? That reasonable relationship has to be comparing, and let me find the quote for you because I really would like to hear from you on this. The promised amount must bear a quote reasonable relationship to the amount actually earned in a typical week. More specifically, it must be roughly equivalent to the employee's usual earnings, blah, blah, blah. Now, my question is, she's comparing the guarantee to the amount actually earned. How do we say, how does that tell us anything other than we have to look at the actual pay? Does Helix emphasize that? Helix was a 602-A case. Which went very specifically into 604-B. Right, as a comparison, yes. Since Mr. Hewitt was paid on a daily basis, right, per day, he was kicked out of 602-A, so the analysis was under 604-B. Did I get that wrong? Your Honor, I think I always took it as assumed in that case that 604-B could not be used. My understanding of the reference to amount actually earned, that that was use of that language from the first sentence as a reference to the rule. There was no hint in Helix, certainly that I can recall, of anything that suggested that the court had any problem with the second sentence. And of course, the roughly equivalent language is further explained in the third sentence, including by the example. So when you get to the places where each of the elements in the test are explained, we think that indicates that Judge Hilton did it right, even though he made two contradictory holdings on 602-A, which is the other point that I had wanted to get to. Thank you, Mr. Dabb. Thank you. Mr. Tucci. Thank you, Your Honor. Judge Dennis, just to follow up on your question concerning Hewitt, you're right in terms of the employee in that case, Justice Kagan, and the court found that his pay scheme could not meet 602-A, so he had to fall under 604-B. That's why she discussed 604-B. In that case, the parties essentially agreed that he could not meet 604-B because of the reasonable relationship analysis. Now, returning also to a question, Judge Dennis, that you posed to my friend on the other side, in terms of this annual salary, what is that for the chiefs? Well, the city is claiming that they don't have just one salary, they have two. It's sort of like a salary inception. On their personal action forms, of course, it lists an annual salary, and their hourly rates are derived from that hourly annual salary. The true ups that were given some years apply to the annual salary, not to the salary guarantees that the city is alleging that the chiefs have. But there is a true up for the alleged guarantees as well. What happens is, for chiefs that work an operational schedule, if they're paid, let's say during the first pay cycle on the 28-day work cycle, the first pay cycle comes after 14 days. If they only work 96 hours, the city issues a pay advance. Really, it's a zero percent interest loan. That's how you can think of it. They issue a pay advance for ten hours to get to 106 hours, and then the following pay period, they deduct that ten hours from their pay because they did not work it in the previous pay cycle. That is not consistent with being paid on a salary basis. It's consistent with being paid on an hourly basis because they're looking at how many hours they worked. Returning to this issue of... That would suggest a never-ending cycle. Do they then make up that deficit going forward for the ten hours they took? That's what the city's claiming, Your Honor. Where's the evidence of that, just in the JA, so we can see what this looks like? On page 91 of the Joint Appendix, this is for Chief Plunkett. If you look, there's a 12-hour regular time accrual that's deducted from his... And there's multiple instances of this throughout the pay records as well, but that negative 12 hours regular time, if you notice, is deducted from his... Thank you. Sorry to interrupt. Actually, that brings up a good point because if we look at what the administrative shifts were paid, the city claims that they issued a pay advance as well for these shifts. They call it a guarantee for 80 hours. That's nowhere in the record. The chiefs have directly controverted that in their declarations. The only source of that guarantee is in Matthew Bossie's affidavit for the city. So there's a genuine...at the bottom, there's a genuine issue of material facts. But we believe that even if the court were to look at this and determine it was a guarantee, it's still not paid on a salary basis because they're using their hourly rates. What do you want? Go back for a trial? No, Your Honor. We actually move for partial summary judgment. Actually, let me clarify. We move for partial summary judgment on liability because we believe that the chiefs were not paid on a salary basis, and the record's very clear about that. If the court were to enter summary judgment for the chiefs, we would then turn to the district court for a trial on damages. But you're talking about what you want them to have done. I'm asking what you want us to do. That's correct, Your Honor. That's exactly what we're asking the court to do, is to reverse the district court, enter summary judgment for the chiefs, and remand to the district court for trial on damages. Now, in terms of this questions and answers document that my friend on the other side mentioned references this guarantee, nowhere within that document does it say the word guarantee. Nowhere within that document does it reference an administrative shift. It applies to firefighters working on an operational schedule, and it's the same 106 hours we just discussed in terms of one pay cycle they're paid 106 hours, the following pay cycle they true it up, they deduct the hours that they didn't work in the previous pay cycle. And then finally, Your Honors, I see my time has expired, so thank you very much, and we would ask the court to reverse and enter summary judgment for the chiefs and remand to the district court for a trial on damages. Thank you. Thank you very much. I want to thank both counsel for their fine arguments in this very simple case. We'll come down and greet you. I know Judge Zenes would love to do that, but she can work miracles, but she can't even do that, can't do that. And then we'll take a break to discuss this case before moving on to our second case.
judges: Albert Diaz, Robert B. King, Paula Xinis